IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| AMERICAN VIDEO GRAPHICS. L.P., | ) | **HIGHLY CONFIDENTIAL:** |
| | ) | **FILED UNDER SEAL** |
| Plaintiff, | ) | |
| | ) | Misc. Action No. _____ 0 5 2 1 3 |
| | ) | |
| v. | ) | (Case No. 6:04-CV-397-LED, |
| | ) | currently pending in the United |
| HEWLETT-PACKARD CO., *et al.*, | ) | States District Court for the |
| | ) | Eastern District of Texas, |
| Defendants. | ) | Tyler Division) |

FILED
OCT 17 2005
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**<u>DECLARATION OF MARC J. PERNICK</u>**

ASHBY & GEDDES
Steven J. Balick (I.D.#2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
(302) 654-2067 (fax)
sbalick@ashby-geddes.com
jday@ashby-geddes.com

*Attorneys for Fujitsu Computer Systems Corp.*

Dated: October 17, 2005

**REDACTED**

## DECLARATION OF MARC J. PERNICK

I, MARC J. PERNICK, hereby state and declare:

I am an attorney admitted to practice in California and am a partner with Morrison & Foerster, LLP. I am a member in good standing of the bar of the State of California. I have personal knowledge of the matters and facts set forth herein and, if called and sworn as a witness, I would and could competently testify thereto. I submit this declaration in support of Fujitsu Computer Systems Corporation's ("Fujitsu") Motion to Compel.

**A. Service of Subpoena on RIN and RIN's Response.**

1.    Fujitsu is a defendant in a patent case in the Eastern District of Texas brought by the plaintiff American Video Graphics, L.P. ("AVG"). There are 17 other defendants in the case. AVG bought the patents-in-suit in that case from a company called Research Investment Network, Inc. ("RIN"). RIN is incorporated in Delaware.

2.

**REDACTED**

3.    On May 25, 2005, on behalf of Fujitsu, the other defendants, and the intervenors on the defense side of the AVG case, Microsoft served upon RIN a subpoena for testimony and production of documents. A true and correct copy of the May 25, 2005 subpoena to RIN is attached hereto as Exhibit 1.

4.    This subpoena was not issued in just the case in which Fujitsu is a named defendant. There are five other patent cases brought by AVG in the Eastern District of Texas ("the other AVG cases"), and for the convenience of the parties and RIN, the subpoena issued out of all six of the AVG cases.

5.    In this subpoena, Request for Production Number 14 sought, among other things, documents **REDACTED**

6.    On June 9, 2005, RIN served its responses to defendants' May 25, 2005 subpoena. A true and correct copy of RIN's responses is attached hereto as Exhibit 2. In its

responses, RIN stated that it would produce documents responsive to Request No. 14, but only to the extent that the documents related to the patents-in-suit.

7.

8.

**REDACTED**

9.

**B. Efforts to Meet and Confer.**

10.     As the party that issued the RIN subpoena, Microsoft was initially taking the lead for the defense group on the meet and confer that related to RIN's subpoena. Mr. John Shumaker of Weil Gotshal & Manges represents Microsoft on the AVG Cases. Discovision/RIN were represented by Mr. Lance Etcheverry, an attorney with the law firm of Skadden Arps Slate Meagher and Flom.

11.     On June 28 and June 30, 2005, my colleague Rachel Coles, another attorney at Morrison & Foerster, spoke with Mr. Shumaker about Fujitsu's need for further documents from Discovision/RIN in response to Request No. 14. Mr. Shumaker agreed to discuss this issue with

pa-1016454                                        2

RIN's counsel Mr. Etcheverry. On June 30, 2005, Mr. Shumaker stated that he had last spoken with Mr. Etcheverry on June 20, 2005, and that he had left several messages for him. Mr. Shumaker said that Mr. Etcheverry had not been returning his calls on a regular basis.

12.    In a second conversation that they had on June 30, 2005, Mr. Shumaker told Ms. Coles that he had raised the issue of obtaining the needed documents from Discovision/RIN with Mr. Etcheverry, but that Mr. Etcheverry said that there was a potential conflict of interest issue that Skadden Arps needed to work out. Specifically, Mr. Etcheverry told Mr. Shumaker that he wanted to get the conflict of interest issue straightened out before discussing whether RIN and Discovision were willing to produce more documents. Mr. Etcheverry said he would need at least a couple of weeks to resolve the conflicts issue.

13.    Then, on July 5, 2005, Mr. Etcheverry left me a voicemail message, in response to my earlier efforts to meet and confer regarding another discovery dispute related to Discovision. Despite earlier substantive discussions on the issue, Mr. Etcheverry now told me that because of "a potential conflict issue related to Discovision's representation in connection with the subpoena and all the related matters," he could not at that time continue to confer with me on the discovery dispute. Mr. Etcheverry said that either he or Discovision's new counsel would get back to me when the conflict got resolved. A true and correct transcription of Mr. Etcheverry's voicemail is attached hereto as Exhibit 3. This was the second time, to my knowledge, that Discovision/RIN's counsel forestalled meet and confer negotiations, based on a possible firm conflict.

14.    I am informed and believe that, a few weeks later, on approximately July 25, 2005, Mr. Etcheverry again told Mr. Shumaker that he was still in the process of working out the conflict that Skadden had in representing both Discovision and RIN. Mr. Etcheverry indicated that he was hopeful that the conflict issue could be resolved within a week or two, but that the issue was out of his control. This was the third time of which I am aware that Discovision/RIN raised their counsel's conflict.

15.     As of August 25, 2005, we had not heard back from anyone purporting to represent Discovision or RIN. Therefore, on August 25, 2005, I sent a letter to Mr. Etcheverry, a true and correct copy of which is attached here to as Exhibit 4. In this letter, I advised that we had not heard back from him regarding the conflict of interest issue, and that Fujitsu could no longer wait to obtain the documents withheld from production. I further explained that RIN's objection to producing documents in response to Request No. 14 other than those that relate to the patents-in-suit was inappropriate, and that in order to rebut AVG's arguments in response to Fujitsu's estoppel defense, Fujitsu needed the requested documents without this limitation. I also offered to substantially narrow the set of documents that Fujitsu was seeking from Discovision and RIN.

**REDACTED**

(*See* Ex. 4. at 2-3).

16.     On August 26, 2005, Mr. David White, Vice President of Discovision, left a voicemail for me. Although it was unclear whether Mr. White was calling on behalf of Discovision alone, or Discovision and RIN, Mr. White stated that he would like to inquire further as to which documents Fujitsu needed. He also stated his opinion that many of the documents requested by Fujitsu "had nothing to do with this lawsuit."

17.     On September 1, 2005, my colleague Ms. Coles telephoned Mr. White on three different occasions at the phone number he provided in this voicemail to me. Ms. Coles left Mr. White a voicemail message at 4:30 P.M., requesting that he call her back and stating that Fujitsu would like to resolve this discovery issue informally.

18.     Ms. Coles telephoned Mr. White again on September 6, 2005, and was able to reach him. She discussed with Mr. White the narrowed sub-categories of documents requested by Fujitsu in my August 25, 2005 letter. Mr. White repeated his opinion that the documents Fujitsu sought had nothing to do with the lawsuit. Ms. Coles explained, as I had in my letter, that one of Fujitsu's defenses was that AVG was estopped from asserting these patents against Fujitsu, **REDACTED**

**REDACTED**

was critical to rebutting AVG's arguments. For this reason, Ms. Coles explained, Fujitsu needed the documents regardless of whether they related to the patents-in-suit. Ms. Coles and Mr. White agreed during this call that Discovision would produce organizational charts for Discovision and RIN, Discovision's partnership agreement, and RIN's articles of incorporation.

**REDACTED**

However, Mr. White stated that since Mr. Masaki was in Japan, many of these emails would likely need to be translated. Ms. Coles and Mr. White did not resolve the issue of production of emails by Discovision/RIN during this call.

19. The next day, on September 7, 2005, Mr. White left Ms. Coles a voicemail message. In this message, Mr. White stated that Skadden Arps was no longer going to be representing RIN, and possibly Discovision, in the future. Mr. White further stated on his message that Discovision was going to have to find new representation and that he did not want to respond to Fujitsu's requests for further documents until the conflict of interest issue had been resolved. He also asked that Fujitsu have patience while the process of finding new representation was completed. A true and correct transcription of this voicemail is attached hereto as Exhibit 5. This was the fourth time that Discovision/RIN sought to delay our meet and confer negotiations based on its counsel's conflict of interest.

20. On September 15, 2005, Mr. Ron Oines of the law firm of Rutan and Tucker sent a letter to Microsoft's counsel Mr. Shumaker, with a copy to me, a true and correct copy of which is attached hereto as Exhibit 6. In this letter, Mr. Oines indicated that his firm would now be representing RIN and Discovision with respect to the defense group's subpoenas.

21. On September 29, 2005, I left a voicemail with Mr. Oines. In this voicemail, I requested that we resume the meet and confer process over the additional documents sought by Fujitsu              **REDACTED**              I received no response.

22. On October 3, 2005, I sent a letter to Mr. Oines, a true and correct copy of which is attached hereto as Exhibit 7. In this letter, I repeated my request that we resume the

pa-1016454                              5

meet and confer process, and confirmed that Mr. White had told Ms. Coles that Discovision and RIN would produce the Discovision partnership agreement, organizational charts for Discovision and RIN, and RIN's articles of incorporation.

23. On October 5, 2005, still having received no response, I sent a letter to Mr. Oines, a true and correct copy of which is attached hereto as Exhibit 8. In this letter, I stated that Fujitsu needed to know as soon as possible Discovision/RIN's final position as to what documents they were willing to produce. I also stated that if an agreement could not be reached, Fujitsu would need to file motions to compel as soon as possible. I requested that Discovision/RIN inform me of its final position by 12:00 P.M. noon on October 7, 2005.

24. Our need to move very quickly at that point was, as explained below, due to RIN's sudden insistence that its corporate designee deposition proceed during the first week of November.

25. On October 6, 2005, Mr. Oines sent a letter to me, a true and correct copy of which is attached as Exhibit 9, responding to my request for Discovision/RIN's final position. In this letter, Mr. Oines denied the agreement reached with Ms. Coles on September 6, 2005, but stated that Discovision and RIN were willing to produce documents referred to in our previous "letter," if Fujitsu would refrain from seeking any additional documents.

26. Later that day, on October 6, 2005, Ms. Coles telephoned Mr. Oines to seek clarification on which documents Discovision/RIN was willing to produce. Mr. Oines confirmed that Discovision/RIN was willing to produce only the three documents referenced in Mr. Pernick's October 3, 2005 letter, not the larger (but still narrow) category of documents sought by Fujitsu in its August 25, 2005 letter.

27. In order to confirm that the parties had indeed reached an impasse, I also telephoned Mr. Oines on October 6, 2005. I informed him that in light of Discovision/RIN's unwillingness to produce anything but the above-referenced three documents, Fujitsu would need to proceed with the filing of its motion to compel. During this conversation, I made one final attempt to explore with Mr. Oines whether there were alternative, less-burdensome ways in

which Discovision/RIN could provide Fujitsu with the documents it needed. Specifically, I inquired if there were particular personnel whose electronic or paper files would be most likely to contain the documents we were seeking, and if there were company hard copy files that would be most likely to contain the documents we needed. Mr. Oines offered no such alternatives. I confirmed that because the parties had reached an impasse, Fujitsu would have no choice but to proceed with its motion to compel.

28.     On October 7, 2005, at approximately 12:00 noon, I sent Mr. Oines a letter via fax and email memorializing our conversations of October 6, 2005. A true and correct copy of this letter is attached hereto as Exhibit 11.

### C. Scheduling of RIN's Deposition and Its Impact on the Timing of Fujitsu's Motion to Compel Production of Documents.

29.     On the evening of October 4, 2005, Microsoft attorney Mr. John Shumaker forwarded to me a letter that he had received from Mr. Oines. A true and correct copy of Mr. Oines's letter is attached hereto as Exhibit 10. In this letter, Mr. Oines stated that RIN's corporate designee pursuant to Federal Rules of Civil Procedure 30(b)(6) would be willing to travel to the United States for a deposition during the week of November 7, 2005. Although I received this letter on October 4, the letter was dated September 28, 2005. Mr. Oines did not send this letter to me, even though Mr. Oines had copied me on his previous September 15, 2005 letter to Mr. Shumaker, and even though he knew that Fujitsu in particular was interested in discovery from RIN.

30.     On October 6, 2005, I had several telephone conversations with Mr. Oines. During these conversations, as explained above, I informed Mr. Oines that Fujitsu would have to proceed with its motions to compel against RIN and Discovision. I also noted that we would need to do so quickly because we would want to receive documents before the deposition that Mr. Oines had proposed for the first week of November. I also explained that Discovison/RIN had created this "time crunch" due to its earlier unwillingness to meet and confer based upon its prior counsel's conflict of interest issues. I thus inquired about the possibility of RIN's

Rule 30(b)(6) corporate designee coming to the U.S. for RIN's Rule 30(b)(6) deposition a little later in November 2005. I also explained that the timing issue could most easily be resolved if the designee would come back in early 2006 for a deposition in the AVG case in which Fujitsu was a defendant, even if he still came to testify in November in the separate but related case out of the Eastern District of Texas, *AVG v. Microsoft*. (The *AVG v. Microsoft* case, a case in which AVG sued Microsoft alone, is set for trial in January. The AVG case in which Fujitsu is one of many PC manufacturer-defendants is not set for trial until September 2006.)

31. In my October 7, 2005 letter to Mr. Oines attached hereto as Exhibit 11, I stated that if RIN was unwilling to produce its witness for a separate deposition in early 2006, Fujitsu would have no choice but to seek accelerated briefing and hearing schedules for its motion to compel. I also presented Mr. Oines with a proposed briefing and hearing schedule, and asked Mr. Oines to stipulate to that schedule.

32. Having yet to receive a response, on October 7, 2005, at approximately 4:30 P.M., I telephoned Mr. Oines to inquire about his response to the proposals. I did not reach him but left a voicemail message requesting his immediate response. At 7:16 P.M., I sent Mr. Oines an email, in which I again requested a response to my letter, and informed Mr. Oines that if an agreement was not reached, Fujitsu would have no choice but to seek an order to shorten time with the Court for a hearing of its motion to compel. A true and correct copy of this email is attached hereto as Exhibit 34.

33. Mr. Oines subsequently responded in an email on Sunday, October 9, 2005, that his client was considering Fujitsu's proposals and he would inform me of the final outcome on Monday, October 10 or Tuesday, October 11, 2005. A true and correct copy of this email is attached hereto as Exhibit 35.

34. On Monday, October 10, 2005, I had another telephone conversation with Mr. Oines. Mr. Oines informed me that Discovision/RIN agreed to Fujitsu's proposed briefing schedule on the motion to compel, but that he did not yet have a response to Fujitsu's proposal to allow Fujitsu to depose RIN's corporate designee in January 2006. On October 10, I sent to

Mr. Oines via fax and email a letter memorializing my conversation with him. A true and correct copy of this letter is attached hereto as Exhibit 36.

35.     On October 11, 2005, Mr. Oines left me a voicemail in which he stated that RIN was willing to have its corporate designee come back to the U.S. for a second deposition in January 2006. This obviated the need for an expedited briefing schedule on Fujitsu's motion to compel.

**D. Other Documents Cited in Fujitsu's Motion to Compel.**

36.     Attached hereto as Exhibit 12 is a true and correct copy of the December 2, 2004 Amended Notice of Scheduling Conference.

37.     Attached hereto as Exhibit 13 is a true and correct copy of the January 10, 2005 Case Management Report.

38.     Attached hereto as Exhibit 14 is a true and correct copy of the June 14, 2004 Patent Sale Agreement between RIN and AVG, as produced by AVG in the AVG case, bates numbered AVG-PC0001872-1879.

39.     Attached hereto as Exhibit 15 are true and correct copies of excerpts from the Discovision Rule 30(b)(6) Deposition Transcript of David White taken on June 7, 2005, as received from the court reporter.

40.     Attached hereto as Exhibit 16 are true and correct copies of excerpts from the Discovision Rule 30(b)(6) Deposition Transcript of David White taken on June 8, 2005, as received from the court reporter.

41.     Attached hereto as Exhibit 17 is a true and correct copy of the January 5, 2005 Declaration of Kenny Masaki.

42.     Attached hereto as Exhibit 18 is a true and correct copy of the May 2, 2003 Exclusive License Agreement between Discovision and RIN.

43.     Attached hereto as Exhibit 19 is a true and correct copy of contact information for Discovision from its website, http://www.discovision.com/contact.htm, last accessed on October 8, 2005.

44. Attached hereto as Exhibit 20 is a true and correct copy of information regarding Discovision from its website, http://www.discovision.com/home.htm, last accessed on October 8, 2005.

45. Attached hereto as Exhibit 21 is a true and correct copy of the May 9, 2003 letter from Discovision to Fujitsu Ltd., as produced by Discovision in the AVG case, bates numbered DVA01066-1073.

46. Attached hereto as Exhibit 22 is a true and correct copy of the September 3, 2003 letter from Discovision to Fujitsu Ltd., as produced by Discovision in the AVG case, bates numbered DVA01063.

47. Attached hereto as Exhibit 23 is a true and correct copy of the October 16, 2003 letter from Discovision to Fujitsu Ltd., as produced by Discovision in the AVG case, bates numbered DVA01061.

48. Attached hereto as Exhibit 24 is a true and correct copy of AVG's July 8, 2005 Opposition to Sony's Motion for Reconsideration or Certification for Interlocutory Appeal of June 9, 2005 Order Denying Motion for Summary Judgment.

49. Attached hereto as Exhibit 25 is a true and correct copy of AVG's April 18, 2005 Opposition to Sony' Motion for Summary Judgment.

50. Attached hereto as Exhibit 26 is a true and correct copy of the June 9, 2005 Order Denying Sony's Motions for Summary Judgment.

51. Attached hereto as Exhibit 27 is a true and correct copy of the July 27, 2005 Order Denying Sony's Motions for Reconsideration.

52. Attached hereto as Exhibit 28 is a true and correct copy of the May 16, 2005 subpoena to Discovision.

53. Attached hereto as Exhibit 29 is a true and correct copy of Discovision's May 26, 2005 Objections and Responses to Subpoena for Testimony and Production of Documents.

54. Attached hereto as Exhibit 30 are true and correct copies of excerpts from the deposition transcript of Eric Dowling, taken on September 8, 2005, as received from the court reporter.

55. Attached hereto as Exhibit 31 are true and correct copies of excerpts from the deposition transcript of Eric Dowling, taken on September 9, 2005, as received from the court reporter.

56. Attached hereto as Exhibit 32 is a true and correct copy of the April 23, 2003 letter from Discovision to Pioneer Corp., as produced by Discovision in the AVG case, bates numbered DVA04177-4187.

57. Attached hereto as Exhibit 33 is a true and correct copy of Lance Etcheverry's June 16, 2005 letter to John Shumaker.

58. Attached hereto as Exhibit 33 is a true and correct copy of Lance Etcheverry's June 16, 2005 letter to John Shumaker.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed in Palo Alto, California on October 11, 2005.

_____
Marc J. Pernick

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October, 2005, the attached **REDACTED DECLARATION OF MARC J. PERNICK** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| J. Clayton Athey, Esquire<br>Prickett Jones & Elliot, P.A.<br>1310 King Street<br>P.O. Box 1328<br>Wilmington, DE 19801 | VIA ELECTRONIC MAIL |
| Ronald P. Oines, Esquire<br>Rutan & Tucker<br>611 Anton Blvd., 14th Floor<br>Costa Mesa, CA 92628-1931 | VIA ELECTRONIC MAIL |

/s/ *Steven J. Balick*
_____
Steven J. Balick

162418.1