## Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF DELAWARE

American Video Graphics, L.P.,

    Plaintiff,

    v.

Hewlett-Packard Co., et al.,

    Defendants.

**SUBPOENA IN CIVIL CASE**

CASE NUMBER    6:05-CV-397-LED

Eastern District of Texas

TO:    Research Investment Network
        c/o The Corporation Trust
        Company
        Corporation Trust Center
        1209 Orange Street
        Wilmington, DE 19801

    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects **(See Exhibit A)** at the place, date and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|
| Ashby & Geddes | November 21, 2005 |
| 222 Delaware Avenue, 17th Floor, Wilmington, Delaware 19801 | |

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

    Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* <br><br> Attorney for **Fujitsu Computer Systems Corporation** | October 28, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Steven J. Balick, Ashby & Geddes, 222 Delaware Avenue, 17th Floor, Wilmington, Delaware 19801  (302) 654-1888

See Rule 45, Federal Rules of Civil Procedure, Parts C & D on the next page)

**PROOF OF SERVICE**

| | | |
|---|---|---|
| DATE  10-28-05       PLACE<br><br>SERVED      Subpoena | The Corporation Trust Company<br>Corporation Trust Center<br>1209 Orange Street<br>Wilmington, DE  19801 | |
| SERVED ON (PRINT NAME)<br>  Scott LaScala | MANNER OF SERVICE<br>Hand Delivery | |
| SERVED BY (PRINT NAME)<br>  Kristen M. Clark | TITLE<br>        Messenger | |

**DECLARATION OF SERVER**

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.


Executed on ___October 28, 2005___        *Kristen Clark*
             DATE                      SIGNATURE OF SERVER

                                     Parcels, Inc.
                                     ADDRESS OF SERVER
                                     230 N. Market Street
                                     Wilmington, DE  19801

Rule 45, Federal Rules of Civil Procedure, Parts (c) & (d):

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and reasonable attorney's fees.

(2) (A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things,  or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)  Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises.  If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued.  If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance;

(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in

person, except that, subject to the provisions of clause (3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)  subjects a person to undue burden.

(B)  If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)  When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# EXHIBIT A

# DEFINITIONS

1. The terms "Document" and "Documents" are used in their customarily broad sense pursuant to Federal Rules of Civil Procedure 26 and 34 and includes, without limitation, the following items, whether handwritten, printed, recorded, filmed or produced by any other mechanical or electronic process, including computer tapes, disks, ROM, CD-ROM or any other data storage media (whether or not in machine-readable form), whether or not asserted to be privileged or immune from discovery and whether master or original copy: agreements; communications (including intra-company communications and communications between individual corporate respondents); correspondence; cablegrams, radiograms, telegrams, telexes, and telecopies; notes and memoranda, summaries and minutes of conferences; summaries and records of personal conversations or interviews; books, manuals, publications, brochures and diaries; time logs, daily planners, and log books; laboratory and engineering reports and notebooks; specifications or bills of materials; charts; plans; sketches; diagrams and drawings; blueprints and other engineering drawings; foils, slides, negatives; promotional proposals; photographs; reports and/or summaries of investigations; opinions and reports of consultants; patents, design registrations, and applications for any of them; patent appraisals and patentability or validity searches and studies; opinions of counsel; sales records, including purchase orders and invoices; reports and summaries of negotiations; pamphlets; catalogs and catalog sheets; advertisements; circulars; trade letters; press, publicity, trade and product releases; translations; drafts of, or original, preliminary notes or marginal notations appearing on any document; other reports and records; computer tapes or cards, electronic mail and any other information-containing paper or medium. A draft or non-identical copy is a separate document within the meaning of this term.

2. The terms "Thing" and "Things" mean any tangible item, including without limitation, models, molds, prototypes, software disks, hard disks, floppy disks, CD ROMs, DVDs, video or audio tapes, back-up tapes or disks, electronic data base files, electronic files, computer programs and samples of any device, apparatus or program.

3. "Communication" and "Communications" are used here in their broadest sense and include any communication, whether written or oral, including telephone communications, email communications, written correspondence, and in-person conversations.

4. "File" and "Files" mean any collection or gathering together of Documents in a folder, box, or other cover or container for purposes of keeping, organizing, or storing same.

5. "Person" shall mean (a) natural persons (also referred to as individuals); (b) legal entities, including without limitation, corporations, partnerships, firms, associations, professional corporations, and proprietorships; and (c) governmental bodies or agencies.  Any subject matter or request involving a corporation or any other entity also refers to its agents, employees, representatives, and attorneys.

6. The terms "Refer or Relate to," "Refers or Relates to," "Referring  or Relating to," "Regard," "Regards," "Regarding," "Concern," "Concerns," "Concerning" or "Pertaining to" include, without limitation, concerning, alluding to, responding to, connected with, referring to, relating to, pertaining to, commenting on, regarding, explaining, supporting, discussing, summarizing, demonstrating, showing, studying, describing, considering, reflecting, analyzing, constituting, containing, embodying, mentioning, evidencing, identifying, resulting from, or setting forth.

7. The terms "AVG," and "plaintiff," shall mean American Video Graphics LP, and its respective members and member organizations, including persons or entities who are members thereof; other partnerships, joint ventures, or other organizations or entities of which AVG is a member, agent, representative, or is

otherwise involved; all of AVG's predecessors-in-interest and successors-in-interest; the present and former partners, officers, directors, trustees, employees, staff members, agents, and counsel of AVG; and any other representative or person acting on behalf of AVG.

8. The terms "Defendants" shall mean the defendants and intervenors named in the above-referenced cases and their respective divisions, subsidiaries, officers, directors, trustees, employees, staff members, agents, counsel and other representatives.

9. "Third Party" shall mean a Person other than a Defendant or AVG.

10. The term "Identify," when used with reference to:

   (a) an individual person, means to state his full name, present or last known employer, job title, present or last known residence address and residence telephone number, and present or last known business addresses and business telephone number, and any other information which would establish his/her relationship to you.

   (b) a business entity, means to state the full name and address of the entity and the names and positions of the individual or individuals connected with such entity who have knowledge of the information requested;

   (c) a Document, means to state the type of Document (letter, memorandum, etc.), the date of the document, author(s) or originator(s), addressee(s), all individuals who received copies of the document, the identity of Persons known or presumed by you to have present possession, custody or control thereof, and a brief description of the subject matter and present location. The foregoing is unnecessary if the Document is produced to Intel. If the document has already been produced, "Identify" means to provide the production number of the Document.

(d) an article or product, means to state the produce number, model number, serial number, type number or other information sufficient to identify it; and

(e) a communication, means to state the date of the Communication, the type of Communication (telephone conversation, meeting, etc.), the place or places where the Communication occurred, the identity of the Person who made the Communication, the identity of the Person(s) who received the Communication and each Person present when it was made or received, and the subject matter discussed.

11. The use of the singular shall be deemed to include the plural, and the use of one gender shall include the other as are appropriate in the context.

12. The term "or" and "and" mean "and/or" in any request, where the meaning would have an effect of bringing additional documents or the identities of additional Persons, business entities, articles or products, or communications within the scope of a request.

13. "The '185 Patent" means United States Patent No. 4,730,185.

14. "The '670 Patent" means United States Patent No. 5,132,670.

15. "The '520 Patent" means United States Patent No. 5,109,520.

16. "The '474 Patent" means United States Patent No. 4,742,474.

17. "The '642 Patent" means United States Patent No. 4,761,642.

18. "The '286 Patent" means United States Patent No. 4,694,286.

19. "The '690 Patent" means United States Patent No. 4,734,690.

20. "The '830 Patent" means United States Patent No. 5,084,830.

21. The "Patents-in-Suit" means the '642 Patent, the '286 Patent, the '185 Patent, the '670 Patent, the '520 Patent, the '474 Patent, the '690 Patent, the '830 Patent, and any foreign patent or patent application claiming priority to any one of the '642, '286, '185, '670, '520, '474, '690, and '830 Patents.

22. The term "Inventors" shall mean Gar A. Bergstedt and Gregory G. Huntzinger, Richard A. Springer, Pavel Houda, Rodney B. Belshee, David L. Knierim, Merlin R. Miller, William G. Waller, Douglas Doornink and John C. Dalrymple.

23. The term "Discovision Associates," and "Discovision" shall mean Discovision Associates, and its respective members and member organizations, including persons or entities who are members thereof; other partnerships, joint ventures, or other organizations or entities of which Discovision is a member, agent, representative, or is otherwise involved; all of Discovision's predecessors-in-interest and successors-in-interest; the present and former partners, officers, directors, trustees, employees, staff members, agents, and counsel of Discovision; and any other representative or person acting on behalf of Discovision.

24. The term "Reston Pointe LLC" shall mean Reston Pointe LLC, and its respective members and member organizations, including persons or entities who are members thereof; other partnerships, joint ventures, or other organizations or entities of which Reston Pointe LLC is a member, agent, representative, or is otherwise involved; all of Reston Pointe LLC's predecessors-in-interest and successors-in-interest; the present and former partners, officers, directors, trustees, employees, staff members, agents, and counsel of Reston Pointe LLC; and any other representative or person acting on behalf of Reston Pointe LLC.

25. The term "Tektronix" shall mean Tektronix, Inc., and its respective members and member organizations, including persons or entities who are members thereof; other partnerships, joint ventures, or other organizations or entities of which Tektronix is a member, agent, representative, or is otherwise involved; all of Tektronix's predecessors-in-interest and successors-in-interest; the present and former partners, officers, directors, trustees, employees, staff members, agents, and counsel of Tektronix's; and any other representative or person acting on behalf of Tektronix.

26. The term "Pioneer" shall mean Pioneer Corporation, and its respective members and member organizations, including persons or entities who are members thereof; other partnerships, joint ventures, or other organizations or entities of which Pioneer is a member, agent, representative, or is otherwise involved; all of Pioneer's predecessors-in-interest and successors-in-interest; the present and former partners, officers, directors, trustees, employees, staff members, agents, and counsel of Pioneer's; and any other representative or person acting on behalf of Pioneer.

27. The terms "Grass Valley Group" and "Grass Valley" shall mean Grass Valley Group, Inc. ("Grass Valley"), and its respective members and member organizations, including persons or entities who are members thereof; other partnerships, joint ventures, or other organizations or entities of which Grass Valley Group is a member, agent, representative, or is otherwise involved; all of Grass Valley Group's predecessors-in-interest and successors-in-interest; the present and former partners, officers, directors, trustees, employees, staff members, agents, and counsel of Grass Valley Group's; and any other representative or person acting on behalf of Grass Valley Group.

28. The terms "You", "Your", "RIN", or "Research Investment Network" shall mean Research Investment Network and its respective members and member organizations, including persons or entities who are members thereof; other partnerships, joint ventures, or other organizations or entities of which RIN is a member, agent, representative, or is otherwise involved; all of RIN's predecessors-in-interest and successors-in-interest; the present and former partners, officers, directors, trustees, employees, staff members, agents, and counsel of RIN; and any other representative or person acting on behalf of RIN.

## INSTRUCTIONS

1.      In producing Documents, furnish all Documents known or available to
You regardless of whether such Documents are possessed directly by You, or by
any parent, subsidiary or affiliated corporation, or by any of Your officers,
officials, directors, employees, agents, representatives, or attorneys, as well as any
other Documents in Your custody or control.

2.      Electronic documents must be produced in their native forms (e.g.,
electronic documents must be produced electronically).  Electronic records and
computerized information must be produced in an intelligible format or together
with a description of the system from which it was derived sufficient to permit
rendering the materials intelligible.

3.      File folders with tabs or labels identifying Documents called for by these
document requests must be produced intact with such Documents.

4.      The selection of Documents from the files and other sources and the
numbering of such Documents shall be performed in such a manner as to ensure
that the source of each Document may be determined, if necessary.

5.      Should You seek to withhold any Document based on some limitation of
discovery (including but not limited to a claim of privilege), it must supply a list
of the Documents for which limitation of discovery is claimed, indicating:

   a.  The identity of each Document's author(s), writer(s), sender(s), or
       initiator(s);

   b.  The identity(ies) of each Document's recipient(s), addressee(s), or
       party(ies) for whom it was intended;

   c.  The date of creation or transmittal indicated on each Document, or an
       estimate of that date, indicated as such, if no date appears on the
       Document;

    d.   The general subject matter as described on each Document, or, if no such description appears, then some other description sufficient to identify the Document; and

    e.   The claimed ground(s) for limitation of discovery (e.g., "attorney-client privilege" or "work product privilege").

6.    If any Document responsive to any of the following requests is believed by you to be subject to confidentiality obligations owed to you by a Third Party, identify the Document, and identify the Third Party to whom you owe an obligation of confidentiality with respect to that document.

7.    If a request is silent as to the time period for which a response is sought, please respond by providing all information, regardless of time.

8.    All Documents produced will be subject to the attached protective order entered in the above-captioned action, pending in the United States District Court for the Eastern District of Texas.

9.    The definition of each defined term herein shall be used regardless of whether or not the term is capitalized.

## REQUESTS FOR PRODUCTION

1. All Documents Concerning the Patents-in-Suit, including any analyses or interpretation of any of the claims of the Patents-in-Suit.

2. All Documents Concerning the inventors of the Patents-in-Suit.

3. All Documents Concerning Conception and actual reduction to practice of the subject matter, including any embodiments, described or claimed in the Patents-in-Suit.

4. All Documents Concerning the filing and prosecution of applications that ultimately issued as, or are otherwise related to, the Patents-in-Suit, including the identities of each person associated with the filing and prosecution of each of the Patents-in-Suit.

5. All Documents Concerning the filing and prosecution of any foreign applications corresponding to the Patents-in-Suit, including any patents issued from those applications.

6. All Documents Concerning attempted and actual assignment, acquisition, ownership, licensing, covenants not to sue or enforce, or disposition of the Patents-in-Suit, including related negotiations, the reasons for the assignments, acquisition, ownership, license, covenants not to sue or enforce, or disposition, the determination of the price at which to assign, acquire, license, or dispose of the Patents-in-Suit, and RIN's rights in the Patents-in-Suit.

7. All Documents Concerning valuations of the Patents-in-Suit at any time, including royalty projections.

8. All Documents Concerning validity of the Patents-in-Suit, including any validity searches concerning the patents, any references identified as potentially invalidating prior art, any prior art concerning the subject matter disclosed in the patents, and any communications concerning validity of the patents.

9. All Documents Concerning alleged or actual infringement of any of the claims of the Patents-in-Suit, including any analysis of such infringement and any communications concerning such infringement.

10. All Documents Concerning any analysis of any product of any Defendant, and any decision concerning whether to sue any Defendant for infringement of the Patents-in-Suit.

11. All Documents Concerning attempted and actual enforcement of the Patents-in-Suit, including any litigation and any notice of the Patents-in-Suit to any Defendant or third party.

12. All Documents Concerning the identity, development, sale, offer for sale, marketing, and marking pursuant to 35 U.S.C. § 287 of products that purportedly embody subject matter described or claimed in the Patents-in-Suit, including products manufactured by or for Tektronix, AVG, Discovision, RIN or licensees thereof.

13. All Documents Concerning Communications between RIN and any other individual or entity, including AVG, Tektronix, Discovision, Pioneer, Reston Pointe LLC, David White, Laurence Marhoefer, Ken Masaki, Eric Dowling, Jake Richter, Bob Westerlund, Graphics Software Systems, Grass Valley Group, Insight in Action, Hewlett Packard, Microsoft, Intel, Fujitsu, any Defendant, any Third Party, or McKool Smith, P.C. (or any of its partners,

attorneys, agents, or employees) regarding the Patents-in-Suit, any Defendant, AVG, or the above-captioned litigation.

14. All Documents Concerning RIN's relationship with Tektronix, Discovision, Pioneer, Reston Pointe LLC, David White, Laurence Marhoefer, Ken Masaki, Hewlett Packard, Eric Dowling, Jake Richter, Bob Westerlund, Grass Valley Group, and McKool Smith, P.C. (or any of its partners, attorneys, agents, or employees), including any interest in any recovery for infringement of the Patents-in-Suit.

15. All Documents that refer or relate to Pioneer's role in Discovision's or RIN's corporate governance, including any approvals Discovision or RIN sought, received, or needed from Pioneer to take any corporate action.

16. All Documents that refer or relate to Pioneer's role in RIN's or Discovision's licensing activities with third parties.

17. All Documents that refer or relate to the organizational structure of RIN, Discovision, and Pioneer.

18. All Documents identifying each officer and director of RIN, Discovision, and Pioneer, as well as documents identifying all shareholders that are common to at least two of the companies and their percentage ownership.

19. All Documents that refer or relate to any payments, loans, or other types of asset transfers or debt guarantees from Pioneer, Discovision, or RIN to one of the other entities.

20. All Documents that refer or relate to any financial or ownership interests held by Pioneer, RIN, or Discovision in any of the other entities.



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

AMERICAN VIDEO GRAPHICS, L.P.,    §
                                  §
            Plaintiff,            §        CIVIL ACTION
                                  §
    vs.                           §        6:04CV397  LED
                                  §
HEWLETT-PACKARD CO., *et al.*,    §        JURY TRIAL
                                  §
            Defendants.           §
                                  §

PROTECTIVE ORDER

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, it is HEREBY ORDERED that:

1.      All documents and things produced by any one party to another in this litigation may bear identifying numbers, and an identification of one or more of the "AVG Cases", such as:

AVG v. Hewlett Packard, et al.
Civil Action 6:04-CV-397
(the "'397 Case")

2.      All documents and things produced by any party shall be numbered using a prefix bearing the party's name or an abbreviation thereof, such as an acronym or the first three letters of its name so long as the abbreviation differs from all other names/abbreviations.  The prefix should be used on a consistent basis and in a manner which makes clear the identity of the producing party.

3.      Any party to this action, and any non-party from whom discovery is sought in connection with this action, may designate as

"PC Confidential"
or

"PC Confidential – Outside Counsel's Eyes Only"

any documents, testimony, or other discovery material that contains "Confidential Information," as defined in the paragraphs below.

4.      No designation of confidentiality shall be made unless the designating party or non-party from whom discovery is sought believes in good faith that the designated material constitutes a trade secret or other confidential research, development, technical or commercial information entitled to protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure (herein, "Confidential Information"). Material designated confidential pursuant to this Order shall refer to any so designated document, testimony, or other discovery material, all copies thereof, all abstracts, summaries, notes, or other derivations thereof, and shall also refer to the information contained in such material.

5.      Until or unless the Court rules otherwise, material marked or otherwise designated as "PC Confidential" shall be maintained in confidence by the party to whom such material is produced and shall not be disclosed to any person except:

        (a)      Outside counsel for the respective parties, including their clerical, litigation support and paralegal employees, provided that any such person is directly involved in preparation or trial of the '397 Case. As used herein, "outside counsel" shall mean attorneys for the respective firms who have made appearances in the case for their clients.

        (b)      Except as otherwise provided in paragraph 6 herein, up to five (5) additional in-house attorneys (including foreign equivalents) who are counsel for that party in the '397 Case, along with those lawyers' associated clerical, litigation support, and paralegal employees directly involved in preparation or trial of the '397 Case ("support staff"), all of the in-house lawyers first having

–2–

agreed on their own behalf, and on behalf of any support staff, to be bound by the provisions of the undertaking attached as Exhibit A, and having signed such undertaking.  The names of such in-house counsel, along with copies of their signed Exhibit A's,  shall be provided to the producing party, who shall have seven (7) calendar days to object to disclosures under this Order.

   (c) Outside consultants/experts for each of the parties, who are not employed by or affiliated with any of the parties, but who are specifically engaged by counsel or the parties to assist in this litigation; provided, however, that (i) any such consultant/expert has signed an undertaking in the form of the attached Exhibit A; (ii) a copy of (a) the signed undertaking, (b) a curriculum vitae of the proposed consultant/expert, (c) an identification of any past or present employment or consulting relationship with any party or any related company, and (d)  an identification of the other cases in which the consultant/expert has testified at trial or in deposition in the last four (4) years, is served on all counsel of record at least ten (10) days before the confidential material is shown to such consultant/expert; and (iii) no party objects in writing to such disclosure within those ten (10) days. If any such objection is made, it must be in writing and state the reasons for such objection; thereafter, no disclosure of Confidential Information shall be made to that consultant/expert as to material produced by the objecting party until the matter is resolved by the Court or upon agreement of the parties.

   (d) Translators of or into foreign languages who are not employed by or affiliated with any of the parties, but are retained only to provide translations of any material designated as "PC Confidential," or "PC Confidential – Outside Counsel's Eyes Only" who have been previously identified to the party producing confidential materials, having first agreed to be bound by the provisions of the undertaking attached as Exhibit A, and having signed such undertaking.

–3–

(e)    Any court reporter and video recorder operator retained by any party to record a deposition in the '397 Case.

(f)    The Court and its officers, court stenographers and outside copy services whose function requires them to have access to material designated as "PC Confidential" or "PC Confidential – Outside Counsel's Eyes Only" under this Protective Order.

6.    Material marked or otherwise designated as "PC Confidential – Outside Counsel's Eyes Only" is further restricted in that it shall not be disclosed to any person identified in category 5(b) above. The parties shall not designate material as "PC Confidential – Outside Counsel's Eyes Only" unless such Confidential Information comprises or contains competitively sensitive information which could be used by another party to obtain a competitive advantage over the producing party. The parties agree, without limitation, that the following categories of information qualify for the designation "PC Confidential – Outside Counsel's Eyes Only":

(a)    Damage-related information (e.g., the number of products sold, total dollar value of sales products, and profit margins for products);

(b)    Source code listings, including any Hardware Description Language (HDL) source code files describing the hardware design of any ASIC or other chips, and descriptions of the operation of the source code;

(c)    Object code listings and descriptions of the operation of object code; and

(d)    Non-public technical information, including schematic diagrams, technical reference manuals, operations manuals, other explanations of the operation of the technology, and the like relating to the accused products.

7.    [RESERVED.]

–4–

8.      [RESERVED.]

9.      This Order is without prejudice to later agreements or requests to the Court to give certain in-house attorneys access to certain information designated "PC Confidential – Outside Counsel's Eyes Only."

10.     If Plaintiff wants to use material designated as "PC Confidential" or "PC Confidential - Outside Counsel's Eyes Only" in the deposition of someone (including third parties) other than an employee or representative of the party that produced the confidential materials, then Plaintiff shall notify the producing party of its desire to so use such materials and identify the materials at least ten (10) business days before the deposition of the non-producing party is to commence.  The producing party and Plaintiff agree to confer in good faith to resolve any disputes and reach agreement on the form (e.g., redacted versions) or manner in which the materials may be used at the deposition.  If Plaintiff and the producing party determine to exclude the other parties from that portion of the deposition in which the "PC Confidential" or "PC Confidential - Outside Counsel's Eyes Only" materials are used, Plaintiff will not use that testimony against any party excluded from the deposition.  If an agreement cannot be reached, then the producing party must seek a protective order from the court in order to limit access to the materials during any deposition.

11.     [RESERVED.]

12.     Notwithstanding the paragraphs above, any third-party witness (also including any former director, officer, agent and/or employee of a producing party) may be shown or examined on, at a deposition or at trial, any document containing material designated "PC Confidential" or "PC Confidential – Outside Counsel's Eyes Only" if it appears from the face of the document that the witness authored or previously received a copy of it, or if specific documentary or testimonial

–5–

evidence establishes that the document was communicated to or received from the witness, or if the producing party so agrees. If at any time, it appears that the witness is not familiar with the document, the examining attorney will forthwith remove the document from the view of the witness. At the conclusion of the examination, no witness may retain copies of confidential information received at deposition or trial.

13.    In the event the producing party elects to produce original documents or other material for inspection, no markings need be made by the producing party in advance of the inspection. During the inspection, all such documents or other material shall be considered as marked "PC Confidential -- Outside Counsel's Eyes Only." After selection by the inspecting party of specified documents or material for copying, the producing party shall make the appropriate copies, and the appropriate confidentiality designations shall be placed on the specified documents or materials prior to providing the copies to the inspecting party.

14.    Access to source code listings, including any Hardware Description Language (HDL) source code files describing the hardware design of any ASIC or other chips, descriptions of the operation of the source code, object code listings and descriptions of the operation of object code, or similarly sensitive code ("Restricted Code"), shall only be provided to those persons who may see material marked or designated under the highest level of confidentiality ("PC Confidential - Outside Counsel's Eyes Only"), and subject to the Prosecution Bar in Paragraph 20, and only on "stand-alone" computers (that is, not connected to a network, Internet or peripheral device except that the stand-alone computers will be connected to a printer or printers) at a secure facility agreed upon by the producing party and the Plaintiff to be made available during regular business hours (9:00 a.m. to 6:00 p.m. local time) on twenty-four (24) hours notice. Access to such secure facility will also be

provided on Saturdays and Sundays, so long as actual notice is provided to the producing party by not later than 9:00 a.m. local time on the Friday before the weekend for which access is requested. Access from 6:00 p.m. through 12:00 midnight local time on weekdays shall be provided so long as actual notice of such need is provided to the producing party by not later than 4:00 p.m. local time on that day. Plaintiff shall make its best efforts to restrict its requests for access to normal business hours. The parties will allow access to Restricted Code in computer searchable form, but need not provide executable code or allow electronic copies to be made of any Restricted Code. The outside consultants /experts, qualified under paragraph 5(c) herein, who are reviewing the Restricted Code (the "Code Reviewers") will be allowed to print paper copies of portions of the Restricted Code and take those paper copies with them when leaving the facility. The Code Reviewers must keep the paper copies of portions of the Restricted Code in a secured container or location at all times when outside the secure facility. Paper copies of the Restricted Code shall include bates number and confidentiality labels when printed. Plaintiff shall maintain a complete log of bates numbered pages printed, and shall produce such log at the time its first expert reports are delivered, regardless of the restrictions on expert discovery below. Further, Plaintiff will supplement the log with each new expert report and ten (10) days after trial. The Code Reviewers may create a back-up copy of the Restricted Code on the stand-alone computer and use their searching tools for inspecting the Restricted Code and to annotate, number the lines of, and bates label the pages of, the back-up copy of the Restricted Code. The back-up copy will remain on the stand-alone computers and be subject to all of the provisions of this Protective Order that govern the Restricted Code.

15.    No designation shall be effective unless there is placed or affixed on such material a "PC Confidential" or "PC Confidential – Outside Counsel's Eyes Only." Testimony given at a

–7–

deposition or hearing and the resulting transcript may be designated as "PC Confidential" or "PC Confidential – Outside Counsel's Eyes Only" by an appropriate statement at the time of the giving of such testimony. When such a statement is made, all parties shall maintain the deposition or hearing transcript and information contained therein as so designated up until thirty (30) days after receipt of a copy of the transcript. During that period, the party desiring to maintain confidentiality more than thirty (30) days after a received party's receipt of a copy of the transcript must designate in writing those portions of the transcript regarded as "PC Confidential" or "PC Confidential – Outside Counsel's Eyes Only." Only those portions designated in writing will thereafter be handled and marked in accordance with the provisions of this Protective Order.

16.    Discovery material produced without the designation of "PC Confidential" or "PC Confidential – Outside Counsel's Eyes Only" may be so designated subsequent to production or testimony when the producing party failed to make such designation at the time of production or during the testimony through inadvertence or error. If discovery material is designated subsequent to production or testimony, the receiving party promptly shall collect any copies that have been provided to individuals other than those authorized in paragraphs 5 and 6 of this Order and shall destroy or return them to the producing party.

17.    A party may challenge a designation by another party at any time. A party that challenges a designation by another party may move the Court to order a lower designation, e.g., from "PC Confidential – Outside Counsel's Eyes Only" to "PC Confidential," or de-designation of any material. The designating party shall bear the burden of establishing the need for the designation.

18.    Any party that mistakenly produces materials protected by the attorney/client privilege, work product doctrine, or other privilege, doctrine, or right may obtain the return of those materials

–8–

by promptly notifying the recipient(s) of the privilege and providing a privilege log therefore. The recipient(s) shall then gather and return all copies of the privileged material to the producing party, except for any pages containing privileged markings by the recipient which shall instead be destroyed and certified as such by the recipient to the producing party.

19.    All discovery material exchanged between the parties in this action, whether designated under provisions of this Protective Order or not, shall be used solely for the prosecution or defense of the claims in these actions.

20.    Any document containing technical information designated as "PC Confidential – Outside Counsel's Eyes Only" is automatically designated as subject to a Prosecution Bar. Any person who receives any document designated "Prosecution Bar" shall not prosecute or prepare any patent application on behalf of any party to this action relating to the disclosed technology from the time of receipt of such information through and including one (1) year following the entry of a final non-appealable judgment or order or the complete settlement of all claims against all parties in this action. In addition, any person subject to the "Prosecution Bar" of this paragraph shall not have any substantive involvement in the prosecution of any such applications filed, or claiming priority from any such application filed, prior to one (1) year following the entry of a final non-appealable judgment or order or the complete settlement of all claims against all parties in this action.

21.    If Confidential Information in the possession, custody, or control of any receiving party is sought by subpoena, request for production of documents, interrogatories, or any other form of discovery request or compulsory process, including any form of discovery request or compulsory process of any court, administrative or legislative body, or any other person or tribunal purporting to have opportunity to seek such information by compulsory process or discovery request, including

private parties, the receiving party to whom the process or discovery request is directed shall (i) within two business days after receipt thereof, give written notice by hand or facsimile of such process or discovery request together with a copy thereof, to counsel for the producing party; (ii) cooperate to the extent necessary to permit the producing party to seek to quash such process or discovery request; and (iii) not make production or disclosure of such Confidential Information until the producing party consents in writing to production or the receiving party is ordered by a court of competent jurisdiction to produce or disclose such Confidential Information, so long as the order is not stayed prior to the date set for production or disclosure.

22.    Within 60 days after the conclusion of this case, including any appeals, all Confidential Information designated and produced hereunder, and all copies thereof, shall be returned to the producing party, or, at the option of the receiving party, receiving counsel shall certify in writing that such material has been destroyed.  Counsel of record may retain one set of all papers filed with the court, including any Confidential Information filed under seal.

23.    No "PC Confidential" or "PC Confidential – Outside Counsel's Eyes Only" material shall be filed in the public record of this action.  Any document or thing containing or embodying such Confidential Information material shall be filed in a sealed envelope bearing such designation on its front face.  In addition, the envelope shall bear the caption of the case, shall contain a concise, non-disclosing inventory of its contents for docketing purposes, and shall state thereon that it is filed under the terms of this Protective Order.

24.    The restrictions set forth in any of the preceding paragraphs, including paragraphs 5 and 6, shall not apply to information or material that:

(a)    was, is, or becomes public knowledge in a manner other than by violation of this Protective Order;

(b)    is acquired by the non-designating party from a third party having the right to disclose such information or material; or

(c)    was lawfully possessed by the non-designating party prior to the entry by the Court of this Protective Order.

25.    This Protective Order shall remain in full force and effect after the termination of this litigation, or until canceled or otherwise modified by Order of this Court.

26.    [RESERVED.]

27.    Nothing in this Order prevents a party from disclosing its own documents and information as it sees fit. Parties may also agree among themselves in a signed writing to permit access to their own documents and information notwithstanding this Order. Such agreements may be submitted to the Court for entry as an order.

28.    A testifying expert's draft reports, notes, outlines, and any other writings leading up to his final report(s) in this case are exempt from discovery. In addition, all communications with, and all materials generated by, a testifying expert with respect to his work on this case are exempt from discovery unless relied upon by the expert in forming his opinions. The expert must produce his final report and all materials on which he relied.

**So ORDERED and SIGNED this 14th day of February, 2005.**



LEONARD DAVIS
UNITED STATES DISTRICT JUDGE

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

[CASE CAPTIONS]

ALLEGIANCE TO PROTECTIVE ORDER

STATE OF _____ )
                                                        ) SS:
COUNTY OF_____ )

I, _____, having been retained by _____ in connection with the above-captioned lawsuit (or I, _____, counsel for _____), hereby acknowledge that I am about to receive Confidential Information as defined in the Protective Order agreed to by the parties and so ordered by the Court in this case.

I certify my understanding that the Confidential Information is being provided to me pursuant to the terms and restrictions of the Protective Order, and that I have been given a copy of and have read and understood my obligations under that Protective Order. I hereby agree to be bound by the terms of the Protective Order. I clearly understand that the Confidential Information and my copies or notes relating thereto may only be disclosed to or discussed with those persons permitted by the Protective Order to receive such material.

Except as otherwise permitted by this Protective Order, I will not share information that I obtain under this Protective Order inside my company, and I will discuss recommendations that I make based on such information, without sharing the substance of Confidential Information, only with senior management making decisions about the litigation.

–12–

I will return all materials containing Confidential Information, copies thereof, and notes that I have prepared relating thereto, to outside trial counsel for the party by whom or on whose behalf I am retained as required by paragraph 22 of the Protective Order.

I hereby submit to the jurisdiction of this Court for the purpose of enforcement of the Protective Order and waive any and all objections to jurisdiction and venue.

I make the above statements under penalty of perjury.

_____

Printed Name:_____

Company Name/Address/Phone:

_____

_____

_____

_____

—13—

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 28th day of October, 2005, the attached **SUBPOENA** was

served upon the below-named counsel of record at the address and in the manner indicated:

J. Clayton Athey, Esquire                                    <u>VIA ELECTRONIC MAIL</u>
Prickett Jones & Elliot, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE  19801

Ronald P. Oines, Esquire                                     <u>VIA ELECTRONIC MAIL</u>
Rutan & Tucker
611 Anton Blvd., 14th Floor
Costa Mesa, CA  92628-1931

/s/ *Steven J. Balick*
_____

Steven J. Balick

162418.1