# EXHIBIT A

Case 1:05-mc-00213-GMS    Document 10-2    Filed 10/31/2005    Page 1 of 7

LEXSEE 1994 DEL CH LEXIS 155

HARRY HAISFIELD, Plaintiff, v. PHILIP C. CRUVER, HARRY F. CRUVER, HARRY F. CRUVER AS TRUSTEE, "JOHN DOE," as Executor of the Last Will and Testament of FRANCES CRUVER, Deceased, ROBERT S. KEEFER, ROBERT P. KEESECKER, SHARON L. CRUVER, PHILIP C. CRUVER AND SHARON L. CRUVER AS TRUSTEES, ROBERT P. KEESECKER AS TRUSTEE, DeCLERK FAMILY TRUST, ECOVAULT, INC. and UNISIL, INC, Defendants.

C.A. No. 12430

COURT OF CHANCERY OF DELAWARE, NEW CASTLE

*1994 Del. Ch. LEXIS 155*

August 17, 1994, Submitted
August 25, 1994, Decided

**DISPOSITION:** [*1]

UPON DEFENDANT ECOVAULT, INC.'S MOTION TO DISMISS (Denied)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant foreign corporation filed a motion to dismiss for lack of personal jurisdiction plaintiff shareholder's action, which alleged that defendant aided and abetted a breach of fiduciary duty. Defendant contended that the sale of one of its products in Delaware by a licensee did not subject it to jurisdiction under *Del. Code Ann. tit. 10, § 3104* (Cum. Supp. 1992).

**OVERVIEW:** Defendant foreign corporation was organized by two directors of plaintiff shareholder's corporation. Plaintiff alleged defendant aided and abetted the directors in the usurpation of business opportunities. Defendant and plaintiff's corporation executed a license agreement whereby plaintiff's corporation sold one of defendant's products in Delaware. In denying defendant's motion to dismiss, the court held that the sale of the product was sufficient to confer jurisdiction over defendant under Del. Code. Ann. tit. 10, § 3104(c)(1) (Cum. Supp. 1992). The court first noted that it was reasonable to disregard defendant's corporate identity given the circumstances of defendant's organization and its purpose. Regardless, the court held that the single sale was sufficient, because it found that the suit "arose under" the transaction to the extent that the sale, the license agreement, and the breach of fiduciary duty were bound together in plaintiffs' action. Moving on, the court held that the minimum contacts and fair play requirements of due process were satisfied, particularly given defendant's intention to allow a Delaware corporation to sell the products in Delaware.

**OUTCOME:** The court denied the motion to dismiss of defendant foreign corporation. The court held that plaintiff shareholder had met his burden of proving a prima facie case establishing jurisdiction over defendant, because the evidence established that defendant transacted business in Delaware and that the exercise of jurisdiction was consistent with due process.

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN1] Delaware courts engage in a two-step inquiry when determining whether the exercise of personal jurisdiction over a nonresident is proper. First, a court must consider if the nonresident's activities fall within Delaware's long arm statute, *Del. Code Ann. tit. 10, § 3104* (Cum. Supp. 1992). Next, the court must determine whether the exercise of jurisdiction over the defendant comports with the requirements of the due process clause of the U.S. Const. amend. XIV.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN2] The court decides a motion to dismiss for lack of personal jurisdiction based upon the pleadings, affidavits, and briefs of the parties. The plaintiff has the

burden to make out a prima facie case establishing jurisdiction over the nonresident. All allegations of fact concerning personal jurisdiction are presumed to be true, unless contradicted by affidavit.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN3] See Del. Code. Ann. tit. 10, § 3104(c)(1) (Cum. Supp. 1992).

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN4] The court may exercise personal jurisdiction over a nonresident defendant on the basis of a single act within Delaware if the claim has its origin in the asserted transaction. Delaware broadly construe *Del. Code Ann. tit. 10, § 3104(c)* (Cum. Supp. 1992), to confer jurisdiction to the maximum extent possible under the due process clause. The court will liberally interpret the statute in favor of exercising jurisdiction.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
*Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Disregard of Corporate Entity*
[HN5] The court may exercise personal jurisdiction over a foreign corporation if the complaint suggests the separate existence of the corporation should be disregarded.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN6] Delaware courts can exercise jurisdiction over foreign corporations if the plaintiff's cause of action "arises from" a jurisdictional act enumerated in the Delaware long-arm statute, Del Code. Ann. tit. 10, § 3104(c) (Cum. Supp. 1992). The "arising from" language requires that the defendant's act set in motion a series of events which form the basis for the cause of action before the court.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN7] A foreign corporation must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice, to comport with the requirements of due process. The foreign corporation's acts may even occur outside of the forum state, so long as the contacts with the forum proximately result from those acts. When the controversy is related to or arises out of the corporation's contacts with the forum state, the essential foundation of personal jurisdiction is the relationship between the corporation, the forum and the litigation.

The touchstone of the minimum contacts analysis is foreseeability - whether the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. A state may assert jurisdiction over a foreign corporation placing a product into the stream of commerce if it is expected the product will be purchased in the forum state.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN8] A choice of law clause, although insufficient standing alone to confer personal jurisdiction, reinforces a defendant's deliberate affiliation with the forum state and the reasonable foreseeability of possible litigation there.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN9] After determining a foreign corporation established minimum contacts with the forum, the constitutional inquiry shifts its focus toward other factors designed to determine whether the exercise of personal jurisdiction complies with the due process requirement of fairness and substantial justice. These factors include the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining effective relief, the interstate judicial system's interest in obtaining efficient resolution of controversies and the states' interests in furthering fundamental social policies. Although not dispositive of the minimum contacts question, these considerations serve to establish the reasonableness of the exercise of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required.

**COUNSEL:**

Irving Morris of Morris and Morris, 1105 N. Market Street, Suite 1600, P.O. Box 2166, Wilmington, DE 19899. Attorneys for Plaintiff.

Robert P. Stein of Camhy Karlinsky & Stein, 1740 Broadway, 16th Floor, New York, NY 10019-4315. Of Counsel.

Arthur L. Dent of Potter Anderson & Corroon, P.O. Box 951, 350 Delaware Trust Building, Wilmington, DE 19899. Attorney for Defendant EcoVault, Inc.

**JUDGES:** STEELE

**OPINIONBY:** MYRON T. STEELE

**OPINION:** STEELE, V.C.

*MEMORANDUM OPINION*

This is a shareholders derivative suit brought by shareholders of Unisil, Inc. ("Unisil") alleging breach of fiduciary duties against the directors of Unisil, aiding and abetting of breach of fiduciary duties and usurpation of corporate opportunities against defendant EcoVault, Inc. ("EcoVault"). Philip and Harry Cruver (collectively, "the Cruvers"), two of the defendant directors of Unisil, are also directors and principal shareholders of EcoVault.

Defendant EcoVault, a Virginia corporation, has moved to dismiss three counts against EcoVault for lack of personal jurisdiction. The Complaint's first of four counts relates solely to Unisil's issuance of stock, and does not implicate [*2] EcoVault.

## I. BACKGROUND

The basic allegations leading to this action can be found in this Court's prior ruling denying the Cruver defendants' motion to dismiss the complaint for failure to state a cause of action and granting Plaintiff's cross motion for leave to file an amended complaint. *See Needham v. Cruver, Haisfield v. Cruver,* Del. Ch., Civ. A. Nos. 12428, 12430, Hartnett, V.C. (May 12, 1993) Mem. Op. ("Cruver I"). The factual allegations relevant to this motion to dismiss are recalled below.

Plaintiff alleges beginning in 1990, the father and son team of Harry and Philip Cruver, along with unidentified others, began a scheme to wrongfully appropriate the assets and business opportunities of Unisil. The Cruvers identified the development and manufacture of above-ground storage tanks as a potential business opportunity for Unisil. After the identification of the opportunity, the Cruvers procured the incorporation of EcoVault, a Virginia corporation with the principle purpose of designing, developing, manufacturing, marketing and distributing above ground petroleum storage tanks. Plaintiff alleges the Cruvers used all or substantially all of Unisil's financial and other [*3] resources, including $ 800,000 Unisil recovered through a settlement in an unrelated lawsuit, for the funding of EcoVault and the development of the new opportunity concerning the above-ground storage tanks.

Unisil and EcoVault share office addresses and telephone numbers. Plaintiff alleges the Cruvers falsely represented to third parties EcoLease Corp., a non-existent corporate entity related to EcoVault, was a subsidiary of Unisil.

On January 24, 1991, Unisil and EcoVault purportedly entered into a Letter of Intent. EcoVault granted Unisil an exclusive three-year license to manufacture, market, sell and lease above-ground storage tanks, n1 subject to execution of a formal license agreement between the parties. In return, Unisil would bear all costs associated with the development, design, manufacture and distribution of the tanks, and would pay EcoVault a licensing fee equal to 75% of the pre-tax operating net income derived from the sale or lease of EcoVault products. On May 21, 1991, the parties executed a formal license agreement with a clause stating the laws of the State of Delaware will govern the agreement. The parties agree Unisil sold at least one tank in Delaware in the [*4] summer of 1991 pursuant to this agreement.

---

n1 EcoVault had applied for a patent regarding these storage tanks.

---

The Plaintiff also alleges the individual defendants intended to merge Unisil with EcoVault. The merger was conditioned on a further distribution of 3.5 million shares of Unisil common stock and a royalty to EcoVault shareholders, including the Cruvers, equal to 6% of sales in excess of the $ 11,166,667 derived from the sale or lease of EcoVault products.

The Plaintiff filed a four count complaint against the Defendants. Count I concerns a Unisil stock issuance allegedly instigated by the individual defendants and is not impacted by EcoVault's motion to dismiss. Count II alleges EcoVault knowingly acted in concert with the Cruvers in causing them to breach their fiduciary duties and responsibilities to Unisil. Count III alleges the Cruvers, and others acting with them, usurped Unisil's corporate opportunity and EcoVault aided and abedded the usurpation. Count IV makes a generalized claim for damages against [*5] the Cruvers and EcoVault.

## II. CONTENTIONS OF THE PARTIES

EcoVault contends this Court lacks jurisdiction to entertain Counts II-IV of the complaint as they pertain to EcoVault. EcoVault argues it did not transact business in Delaware as required by the Delaware long-arm statute. EcoVault argues it was only a "passive licensor of above ground storage technologies and has never marketed, sold, or installed a Storage Vault in the State of Delaware. EcoVault maintains Unisil developed, designed, and marketed the vault sold in Delaware.

EcoVault argues even if the Court finds EcoVault had transacted business in Delaware, the causes of action asserted against EcoVault do not arise from the alleged selling of one vault. EcoVault asserts the causes of action accrued *before* the vault was sold and, thus, the selling of the vault does not relate to the alleged aiding and abetting and usurpation of corporate opportunity. The selling of the vault was not a critical step in the chain of events resulting in the Plaintiff's cause of action.

EcoVault also argues the exercise of jurisdiction over the defendant would violate due process. EcoVault argues it did not purposefully avail itself of [*6] Delaware law, and it does not have the requisite minimum contacts with Delaware.

Plaintiff, of course, argues EcoVault transacted business in Delaware sufficient to confer jurisdiction both under the long-arm statute and to meet with the requirements of due process. Plaintiff argues the Court should disregard the separate existence of Unisil and EcoVault, relying upon the alleged facts in the complaint. Plaintiff, focusing on the continuing nature of the alleged wrong, argues the direct or indirect selling of one above-ground storage tank in Delaware is inextricably tied to the allegations of wrongful taking, misappropriation, and exploitation of a corporate opportunity belonging to Unisil. In the alternative, Plaintiff also argues jurisdiction would be proper under a conspiracy theory of jurisdiction.

III. ANALYSIS

[HN1] Delaware Courts engage in a two-step inquiry when determining whether the exercise of personal jurisdiction over a nonresident is proper. *Hercules Inc. v. Leu Trust and Banking (Bahamas) Ltd., Del. Supr., 611 A.2d 476, 480 (1992), cert. dismissed, 113 S.Ct. 1836 (1993)*. First, the Court must consider if the [*7] nonresident's activities fall within Delaware's long arm statute, *10 Del. C. § 3104* (Cumulative Supp. 1992). *Hercules, 611 A.2d at 480*. Next, the Court must determine whether the exercise of jurisdiction over the defendant comports with the requirements of the due process clause of the Fourteenth Amendment. *Id. at 481*.

[HN2] This Court will decide this motion based upon the pleadings, affidavits and briefs of the parties. Thus, plaintiff has the burden to make out a *prima facie* case establishing jurisdiction over the nonresident. *Hart Holding v. Drexel Burnham Lambert, Del. Ch., 593 A.2d 535 (1991)*. All allegations of fact concerning personal jurisdiction are presumed to be true, unless contradicted by affidavit. *Jeffreys v. Exten, 784 F. Supp. 146, 151 (D. Del. 1992); see Greenly v. Davis, Del. Supr., 486 A.2d 669, 670 (1984)*.

A. Long-Arm Statute

Plaintiff contends this Court has personal jurisdiction over EcoVault pursuant to *Title 10, Section 3104(c)(1) of the Delaware Code*. Section 3104 provides:

> [HN3]
> As to a cause of action [*8] brought by any person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident, or his personal representative who in person or through an agent:
>
> (1) Transacts any business or performs any character of work or service in the State . . . .

[HN4] The Court may exercise personal jurisdiction over a nonresident defendant on the basis of a single act within Delaware if the claim has its origin in the asserted transaction. *LaNuova D & B, S.p.A. v. Bowe Co., Del. Supr., 513 A.2d 764, 768 (1986)*. Delaware courts have broadly construed *Del. C. § 3104(c)* to confer jurisdiction to the maximum extent possible under the due process clause. *Hercules, 611 A.2d at 480; LaNuova, 513 A.2d at 768*. The Court will "liberally interpret the statute in favor of exercising jurisdiction." *Jeffreys, 784 F. Supp. at 151*.

Plaintiff argues Unisil's sale of one EcoVault above-ground storage vault in Delaware, pursuant to the licensing agreement, suffices to prove EcoVault transacted business in Delaware. EcoVault argues [*9] it is merely a passive licensor of above ground storage tank technologies and Unisil, not EcoVault, sold and installed the Delaware vault.

At least one case, which has carefully analyzed personal jurisdiction, has suggested [HN5] the Court may exercise personal jurisdiction over a foreign corporation if the complaint suggests the separate existence of the corporation should be disregarded. *See Kahn v. Lynch Communication Sys., C.A. No. 8748, Berger, V.C. (Aug. 24, 1989) Mem. Op. at 7*. In *Kahn*, the Court declined to exercise jurisdiction over a French corporation having no ties to Delaware except as the parent of the company which negotiated and consummated the merger at issue because the complaint did not allege the foreign corporation had "transacted any business in Delaware." *Id*. The Court left open the possibility for jurisdiction if the complaint suggested "the separate existence of the [parent and subsidiary] should be disregarded." *Id*. In the case at bar, not only does the complaint allege breaches of fiduciary duty which indicates the Court should disregard the separate corporate entities of Unisil and EcoVault, but the specific facts alleged give rise to the clear [*10] inference Unisil and EcoVault acted in relevant part as one.

Accepting the facts alleged in the complaint as true, the license agreement between Unisil and EcoVault cannot be considered an arms-length transaction entered into by two distinct, separate entities. Instead, the complaint gives rise to the inference "that the Cruvers wrongfully used Unisil's resources for a personal venture for their own profit." *Cruver I, supra*, at 14. The Cruvers,

although not a direct party to the agreement as individuals, have a significant financial interest in both Unisil and EcoVault. The Cruvers are officers and directors of both Unisil and EcoVault. EcoVault and Unisil share addresses and telephone numbers. The Cruvers even represented EcoLease Corporation, a non-existent corporate entity related to EcoVault, to be a subsidiary of Unisil. These facts lead the Court to the conclusion the separate existence of the two corporations should be disregarded for the purposes of this motion. Thus, the sale of one EcoVault storage tank in Delaware, pursuant to the licensing agreement, suffices to establish EcoVault transacted business in Delaware, meeting the requirements of *10 Del. C. § 3104(c)(1)*. [*11] n2

n2 Even if the licensing agreement was an arms-length transaction between EcoVault and UNISIL, the licensing agreement may be enough to find EcoVault transacted business in Delaware when the parties contemplated the storage vaults would be marketed and sold in Delaware. See *Southern Machine Co. v. Mohasco Indus., 401 F.2d 374, 382-83 (6th Cir. 1968)*.

EcoVault argues even if the Court finds EcoVault transacted business in Delaware, the Plaintiff's claims against EcoVault do not arise from any of EcoVault's acts relating to its business in Delaware. Contrary to EcoVault's assertions, the Court finds the act of selling the EcoVault storage tank in Delaware is an integral part of the Plaintiff's claims for breach of fiduciary duty, waste, misappropriation and diversion of Unisil's assets, and diversion of Unisil's business opportunity. [HN6] Delaware courts can exercise jurisdiction over foreign corporations if the Plaintiff's cause of action "arises from" a jurisdictional act enumerated in [*12] the Delaware long-arm statute. See *10 Del. C. § 3104(c)*. The "arising from" language requires the defendant's act set "in motion a series of events which form the basis for the cause of action before the court." *Sears, Roebuck and Co. v. Sears plc, 752 F. Supp. 1223, 1227 (D. Del. 1990)*. Plaintiff's claims focus on the usurpation of the corporate opportunity to design, develop, market, distribute and sell above-ground storage tanks - a business opportunity allegedly cultivated with Unisil assets. The sale of even one tank in Delaware constituted an actual event evidencing the consummation of the plaintiff's usurpation of a corporate opportunity theory. This harm continued with the selling of each storage tank, including the payment of EcoVault's licensing fee of seventy-five percent of the pre-tax operating income derived from the products' sale. Consequently, EcoVault's acts concerning the licensing agreement and the subsequent sale of storage vaults, including the tank sold in Delaware, give rise to the Plaintiff's claims.

The Court finds EcoVault has transacted business in Delaware and the Plaintiff's claims arise from EcoVault's related [*13] acts.

B. Due Process

[HN7] A foreign corporation must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" to comport with the requirements of due process. *International Shoe Co. v. Washington 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)* (citation omitted). The foreign corporation's acts may even occur outside of the forum state, so long as the contacts with the forum proximately result from those acts. *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)*. When the controversy is related to or arises out of the corporation's contacts with the forum state, the essential foundation of personal jurisdiction is the relationship between the corporation, the forum and the litigation. *Shaffer v. Heitner, 433 U.S. 186, 204, 53 L. Ed. 2d 683, 97 S. Ct. 2569 (1977)*. The touchstone of the minimum contacts analysis is foreseeability - whether "the defendant's conduct [*14] and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)*. A state may assert jurisdiction over a foreign corporation placing a product into the stream of commerce if it is expected the product will be purchased in the forum state. *Id. at 298*.

Bearing these constitutional principles in mind, it is apparent EcoVault acted purposefully to establish minimum contacts with Delaware. As stated above, EcoVault entered into a licensing agreement with Unisil, a Delaware corporation, with respect to the design, development manufacture, use, sale and leasing of above-ground storage tanks. The Cruvers were officers and directors with a large financial interest in both corporations. EcoVault targeted Delaware as distribution territory for their EcoVault storage tanks. The parties sold at least one EcoVault storage tank in Delaware. Clearly, EcoVault intended to seize the privilege of transacting business in Delaware.

The clause [*15] in the license agreement between EcoVault and Unisil which provides the agreement shall be governed by Delaware law further evidences EcoVault's desire for contact with Delaware. [HN8] A choice of law clause, although insufficient standing alone to confer personal jurisdiction, "reinforces his deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there. *Burger King,*

*471 U.S. at 482.* The weight of this evidence is further strengthened by the central role the licensing agreement played in the alleged scheme to usurp Unisil's corporate opportunity.

The choice of law clause, combined with the sale of the EcoVault above-ground storage tank in Delaware and the targeting of Delaware as a potential market reinforces EcoVault's purposeful availment of the benefits and protections of Delaware's law. Thus, the Court finds EcoVault has the requisite minimum contacts with Delaware. n3

> n3 It follows from this determination there is no need to examine the conspiracy theory of jurisdiction.

[*16] [HN9]

After determining a foreign corporation established minimum contacts with the forum, the inquiry shifts its focus toward other factors designed to determine whether the exercise of personal jurisdiction complies with the due process requirement of fairness and substantial justice. *Burger King, 471 U.S. at 476.* These factors include the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining effective relief, the interstate judicial system's interest in obtaining efficient resolution of controversies and the states' interests in furthering fundamental social policies. *World-Wide, 444 U.S. at 292.* Although not dispositive of the minimum contacts question, these considerations serve to establish the reasonableness of the exercise of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King, 471 U.S. at 477.*

No one can question Delaware's "strong interest in the effective administration of the law governing corporations and limited partnerships [*17] organized under its laws." *In re USACafes, L.P. Litigation, Del. Ch.,* 600 A.2d 43, 51 (1991) (citing *Armstrong v. Pomerance, Del. Supr.,* 423 A.2d 174, 177 (1980); *McDermott Inc. v. Lewis, Del. Supr.,* 531 A.2d 206 (1987)). This "strong interest" includes providing effective and adequate relief to plaintiff shareholders of a Delaware corporation. This is especially so, if, drawing all reasonable inferences from the allegations in the complaint favorable to the plaintiff, as alleged, the parties controlling the Delaware corporation breached their fiduciary duties by usurping a Delaware corporation's corporate opportunity and wasting the Delaware corporation's assets using a foreign corporation as the vehicle for their scheme. Forcing the plaintiff shareholders to litigate their rights in two separate forums would give rise to duplicative proceedings resulting in a substantial and unnecessary increase of expense for the parties as well as the inefficient waste of the courts valuable resources and time. Duplicative litigation would frustrate the strong social policy goal of providing prompt [*18] and efficient resolution of disputes involving the rights of public corporation shareholders.

In light of the foregoing facts and policies, the Court concludes EcoVault purposefully availed itself of the laws of Delaware and could anticipate litigating in Delaware. This Court finds the Court's exercise of personal jurisdiction of EcoVault would not violate principles of due process.

IV. CONCLUSION

The Plaintiff has met his burden of proving a *prima facie* case establishing jurisdiction over EcoVault. EcoVault has transacted business in Delaware, and the Plaintiffs' claims arise from EcoVault's acts in connection with its business transaction. This finding suffices to meet the requirements of *10 Del. C. § 3104(c)*, bringing EcoVault's conduct into the scope of the Delaware long-arm statute.

Furthermore, Plaintiff has shown EcoVault has minimum contacts with Delaware and this Court's exercise of personal jurisdiction over EcoVault will not violate the due process clause of the Fourteenth Amendment.

For the reasons stated above, EcoVault's Motion to Dismiss for lack of personal jurisdiction is DENIED.

IT IS SO ORDERED.

Myron T. Steele, Vice Chancellor [*19]